UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COGNIMEM TECHNOLOGIES, INC., and BRUCE MCCORMICK,<br><br>    Plaintiffs,<br><br>        v.<br><br>GUY PAILLET, et al.,<br><br>    Defendants. | No. 2:13-cv-00915-MCE-CKD<br><br>**MEMORANDUM ORDER** |

Presently before the Court is an Ex Parte Application for a Temporary Restraining Order ("Application") filed by Plaintiffs CogniMem Technologies, Inc. ("CogniMem") and Bruce McCormick ("McCormick") (collectively "Plaintiffs"). (ECF No. 6.) Plaintiffs seek the Court's order enjoining Defendants Guy Paillet, Anne Menendez and General Vision Services, Inc. ("Defendants") from taking any actions not in accordance with the Bylaws enacted for CogniMem on May 9, 2013, including removing Plaintiff McCormick as a director, officer or employee of CogniMem and taking any actions to dissolve CogniMem. For the reasons stated below, Plaintiffs' Application is granted.

///

///

///

1

# BACKGROUND[1]

Plaintiffs are: (1) CogniMem Technologies Inc. ("CogniMem"), a Delaware corporation with its principal place of business in Folsom, California, and (2) Bruce McCormick, CogniMem's shareholder, president and director.  McCormick owns 33.91% of CogniMem's outstanding shares.  On May 9, 2013, Plaintiffs filed their Complaint alleging claims for (1) violation of the Anti-Cybersquatting Act, 15 U.S.C. § 1125(d); (2) breach of fiduciary duty; (3) fraud; (4) declaratory relief; (5) violation of Cal. Bus. & Prof. Code § 17200; and (6) conversion.  The Complaint names the following Defendants: (1) Guy Paillet, a 2.61% shareholder and former director of CogniMem; (2) Anne Menendez, a 2.61% shareholder and former director of CogniMem; (3) General Vision, Inc., a California corporation which owns 52.17% and allegedly controls 66.09% of CogniMem's shares; (4) Cognitive Silicon Group, Inc., a California corporation which is a parent corporation of General Vision; and (5) Norlitech LLC, a California limited liability company allegedly owned and controlled by Paillet and Menendez.  Paillet and Menendez are both officers and directors of General Vision and controlling shareholders in Cognitive Silicon Group.

CogniMem originally had four Board of Directors members: Plaintiff McCormick, Defendant Paillet, Defendant Menendez, and Ivo Austin.  On April 2, 2013, Austin, Paillet and Menendez resigned from the Board as a result of serious disagreements with McCormick, thus leaving McCormick as the sole director of CogniMem.  On May 9, 2013, McCormick adopted CogniMem's bylaws which, among other things, prescribed a specific procedure for amending the bylaws and for calling annual and special shareholder meetings.

///
///

---

[1] Unless noted otherwise, the relevant facts are derived, at times verbatim, from Plaintiffs' Complaint, filed on May 9, 2013 (ECF No. 1), and Plaintiffs' instant Application.

On May 15, 2013, General Vision, as CogniMem's majority shareholder, adopted its own set of CogniMem's bylaws, which set the Board's size at three directors, and appointed Menendez and Paillet as directors. On the same day, the newly-appointed directors sent notice for the Board of Directors meeting to McCormick and set the meeting for the next day, May 16, 2013 at 4 p.m. The meeting's agenda included, inter alia, removal of McCormick as CongiMem's director and officer and dissolution of CogniMem. To prevent those events from happening, Plaintiffs filed the instant TRO request on May 15, 2013.

In their Application, Plaintiffs argue that the bylaws adopted by General Vision are invalid, and that the actions of General Vision, Paillet and Menendez directed at removing McCormick from corporate offices and dissolution of CogniMem are contrary to law and are also prohibited by the bylaws adopted by McCormick for CogniMem on May 9, 2013. Accordingly, Plaintiffs request a temporary restraining order enjoining Defendants from removing McCormick from corporate offices at CogniMem, from dissolving CogniMem and also from taking any other action contrary to the May 9, 2013 bylaws. On May 16, 2013, the Court issued an Order setting this matter for hearing on May 22, 2013, directing Defendants to file an opposition to Plaintiffs' Application no later than May 20, 2013, at 12:00 p.m., and directing Plaintiffs to file a response no later than May 21, 2013, at 12:00 p.m. (ECF No. 8.) Pending the hearing, to preserve the status quo and to prevent irreparable harm to Plaintiffs, the Court enjoined any actions by Defendants directed at removing McCormick from corporate offices at CogniMem and dissolving CogniMem. (Id.)

///
///
///
///
///
///

To date, Defendants have not filed an opposition to Plaintiffs' Application. However, on May 20, 2013, Ivo Austin, who appears to represent Defendant General Vision, informed the Court by email that "Defendants in the above-captioned action will not oppose Plaintiffs' Ex Parte Motion for Temporary Restraining Order." Defendants have not responded to the Court's subsequent request to file a formal statement of non-opposition to Plaintiffs' Application.[2]

## STANDARD

The purpose of a temporary restraining order is to preserve the relative positions of the parties—the status quo—until a trial on the merits can be conducted. Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974) (temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"); LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158 (9th Cir. 2006) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). Issuance of a temporary restraining order as a form of preliminary injunctive relief "is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Defense Council, 555 U.S. 7, 22 (2008). Plaintiffs have the burden of proving the propriety of such a remedy by clear and convincing evidence. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); Granny Goose, 415 U.S. at 441. The propriety of a temporary restraining order hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

///
///
///

---

[2] In the absence of any opposition from Defendants, the Court has determined that this matter is suitable for a decision without oral argument. See E.D. Cal. R. 230(g).

4

1    In general, the showing required for a temporary restraining order is the same as that required for a preliminary injunction. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a temporary restraining order must establish that he is (1) "likely to succeed on the merits;" (2) "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) "a preliminary injunction is in the public interest." Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing Winter, 555 U.S. at 20); see also Am. Trucking Ass'ns, Inc. v. City of L.A., 559 F.3d 1046, 1052 (9th Cir. 2009) (adopting the preliminary injunction standard articulated in Winter)). "If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied." Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010) (citing Winter, 555 U.S. at 22). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24 (quoting Amoco Prod. Co., 480 U.S. 531, 542 (1987).

Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiffs' favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

///
///
///
///
///
///

# ANALYSIS

**A.     Likelihood of Success on the Merits**

The crux of Plaintiffs' arguments in support of their Application is that General Vision could not lawfully adopt a new set of bylaws for CogniMem and appoint Paillet and Menendez to the Board because those actions are contrary to the May 9, 2013, bylaws adopted for CogniMem by McCormick.  Accordingly, Plaintiffs request the Court declare that the bylaws adopted by General Vision are "null and void ab initio'" and enjoin Defendants from taking any action contrary to the May 9, 2013, bylaws, including removing McCormick from corporate offices at CogniMem and dissolving CogniMem.  (ECF No. 6.)

Section 109(b) of the Delaware General Corporation Law ("GCL") provides:

> After a corporation . . . has received any payment for any of its stock, the power to adopt, amend or repeal bylaws shall be in the stockholders entitled to vote. . . .  Notwithstanding the foregoing, any corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors . . .  The fact that such power has been so conferred upon the directors or governing body, as the case may be, shall not divest the stockholders . . . of the power, nor limit their power to adopt, amend or repeal bylaws.

8 Del.C. § 109(a).  Here, CogniMem's Certificate of Incorporation provides, in relevant part, that "the Board of Directors shall have the power to adopt, amend or repeal the by-laws."  (Declaration of Bruce McCormick ("McCormick Decl.") Ex. 1; ECF No. 6-4.)  Accordingly, Plaintiff McCormick as CogniMem's sole remaining director could adopt bylaws for CogniMem.

///
///
///
///
///

The May 9, 2013, bylaws adopted by McCormick for CogniMem contain the following relevant provisions: (1) the number of directors is set at one, subject to change pursuant to resolution approved by 67% of CogniMem's stockholders; (2) the bylaws may be amended or repealed at any annual meeting of the stockholders by a vote of 67% of the shares represented and entitled to vote at such meeting, or by a unanimous vote of the Board of Directors; (3) special meetings of the stockholders may be called by the Board of Directors, the Chief Executive Officer, or by the stockholders holding not less than 67% of the voting power of the corporation; and (4) written notice of each meeting of stockholders shall be given to each stockholder entitled to vote at the meeting not less than thirty not more than sixty days before such meeting.  (McCormick Decl & Ex. 3.)

Shortly after the adoption of CogniMem's bylaws by McCormick, Defendant General Vision, as a majority shareholder of CogniMem, attempted to enact its own set of bylaws for CogniMem, set the size of the Board of Directors at three directors, and appoint Defendants Paillet and Menendez as directors.  (Declaration of Brent Lawrence ("Lawrence Decl.") ¶ 5 & Exs. 4, 5; ECF No. 6-3.)  Defendants then set a Board of Directors meeting for the next day, May 16, 2013.  (Lawrence Decl. ¶ 6 & Ex. 4.)  The meeting's agenda included, among other things, removal of McCormick from all corporate offices at CogniMem and dissolution of CogniMem.  (Id.)

As mentioned above, the Delaware GCL provides that the delegation of authority to adopt, amend or repeal bylaws to the board of directors "shall not divest the stockholders . . . of the power, nor limit their power to adopt, amend or repeal bylaws." 8 Del.C. § 109(a).  However, relevant for the purposes of Plaintiffs' instant Application, Section 228(a) of the GCL provides:

///
///
///
///

> Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock <u>having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted</u> . . . .

8 Del. C. § 228(a) (emphasis added). Pursuant to the May 9, 2013, bylaws adopted for CogniMem by McCormick, CogniMem's bylaws may be amended or repealed at any annual meeting of the stockholders by a vote of 67% of the shares represented and entitled to vote at such meeting, or by a unanimous vote of the Board of Directors. (McCormick Decl. ¶ 10 & Ex. 3.) As demonstrated by the documents submitted in support of Plaintiffs' Application, General Vision owns only 52.17% of CongiMem's shares, which is insufficient to amend or repeal CogniMem's bylaws by a shareholders' written consent. (See McCormick Decl. ¶ 4.) Therefore, Defendant General Vision could not amend or repeal the May 9, 2013, bylaws adopted for CogniMem by McCormick.

Accordingly, in the absence of any contrary argument from Defendants, the Court concludes that Plaintiffs have carried their burden of demonstrating that they are likely to prevail on the merits of their claims for relief, see <u>Sierra Forest Legacy</u>, 577 F.3d at 1021, or, at the very least, raised "serious questions going to the merits" of those claims. <u>Alliance for Wild Rockies</u>, 632 F.3d at 1134-35.

### B. Irreparable Injury

To be entitled to a temporary restraining order, a plaintiff must demonstrate immediate threatened injury. <u>Caribbean Marine Servs. Co., Inc. v. Baldridge</u>, 844 F.2d 668, 674 (9th Cir. 1988). Indeed, a plaintiff "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial."

Ft. Funston Dog Walkers v. Babbitt, 96 F.Supp.2d 1021, 1039 (N.D. Cal. 2000) (citation omitted). "The preliminary injunction must be the only way of protecting the plaintiff from harm." Id. Generally, the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974) (citation omitted).

    Here, Plaintiffs argue that, in the absence of injunctive relief, Plaintiff McCormick "would suffer irreparable harm in that he has invested $1.7 million in CogniMem . . . and would have no ability to prevent the defendants from devaluing and dissolving the corporation, as they have threatened to do." (ECF No. 6 at 8.) Although a claim of monetary losses, without more, is not sufficient to demonstrate an irreparable injury, a showing that a company's very business existence is threatened is sufficient to show irreparable harm. See Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1474 (9th Cir. 1985) (suggesting that the irreparable injury requirement would be satisfied if plaintiff demonstrates that it is "threatened with extinction" or with "being driven out of business"). Here, the very existence of Plaintiff CogniMem is threatened in the absence of injunctive relief.

    Additionally, Plaintiffs have sufficiently demonstrates that, in the absence of injunctive relief, they will suffer damages to the goodwill of their business and would lose certain intellectual property rights, including rights to a registered trademark "CogniMem," which Defendants are allegedly trying to divert to themselves. (ECF No. 6 at 8.) The losses alleged by Plaintiffs amount to "irreparable harm" for the purposes of issuing injunctive relief. See, e.g., Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir.1991); Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir.2001); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1215-19 (C.D. Cal. 2007).

    Accordingly, the Court concludes that Plaintiffs are likely to suffer irreparable harm in the absence of injunctive relief.

**C.     Balance of Equities and Consideration of Public Interest**

In deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief . . . pay[ing] particular regard for the public consequences in employing the extraordinary remedy of injunction."  Winter, 555 U.S. at 9.  Here, while Plaintiffs would suffer irreparable injury in the absence of a temporary restraining order, Defendants would not suffer any harm by maintaining the status quo.  Further, because a temporary restraining order's reach is narrow and affects only the parties with no impact on nonparties, "the public interest will be at most a neutral factor in the analysis rather than one that factors granting or denying the preliminary injunction."  See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138-39 (9th Cir. 2009).

In sum, in the absence of any arguments to the contrary from Defendants, the Court finds that Plaintiffs have carried their burden of demonstrating entitlement to a temporary restraining order.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Ex Parte Application for a Temporary Restraining Order (ECF No. 6) is hereby GRANTED as follows:

1.     Defendants are hereby enjoined from taking any actions to remove Plaintiff McCormick as a director, officer, or employee of CogniMem, taking any actions to dissolve CogniMem, or taking any other actions not in accordance with CogniMem's Bylaws enacted on May 9, 2013.

2.     Plaintiffs are directed to file a motion for preliminary injunction and any supporting documents no later than **May 24, 2013, at 4:00 p.m.**

3.     Defendants are directed to file an opposition to Plaintiffs' motion for preliminary injunction no later than **May 29, 2013, at 4:00 p.m.**

1     4.      Plaintiffs may file a response no later than **May 31, 2013, at 4:00 p.m.**

2     5.      The hearing on Plaintiffs' motion for preliminary injunction is hereby set for **June 4, 2013, at 10:00 a.m.** in Courtroom 7.

6. The parties' failure to comply with the briefing schedule set forth above will result in further orders by this court, including, but not limited to, terminating sanctions.

7. The Temporary Restraining Order is to remain in effect until **June 4, 2013**. If Plaintiffs fail to move for a preliminary injunction as directed above, the Court will vacate the instant Temporary Restraining Order without further notice to the parties.

8. The hearing on Plaintiffs' Application for a Temporary Restraining Order currently set for May 22, 2013, is hereby VACATED.

IT IS SO ORDERED.

DATED: May 21, 2013

_____
MORRISON C. ENGLAND, JR. CHIEF JUDGE
UNITED STATES DISTRICT COURT

11