UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COGNIMEM TECHNOLOGIES, INC., and BRUCE MCCORMICK,<br><br>Plaintiffs,<br><br>v.<br><br>GUY PAILLET, et al.,<br><br>Defendants. | No. 2:13-cv-00915-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

Presently before the Court is a Motion for Preliminary Injunction filed by Plaintiffs CogniMem Technologies, Inc. ("CogniMem") and Bruce McCormick ("McCormick") (collectively "Plaintiffs"). (ECF No. 14.) Plaintiffs seek the Court's order enjoining Defendants Guy Paillet, Anne Menendez and General Vision Services, Inc. (collectively "Defendants") from taking any actions not in accordance with the Bylaws enacted for CogniMem on May 9, 2013, including removing Plaintiff McCormick as a director, officer or employee of CogniMem. On June 4, 2013, the Court heard oral arguments regarding Plaintiffs' Motion for Preliminary Injunction.

After careful consideration of the parties' filings and exhibits prior to the hearing, as well as oral arguments made during the hearing, the Court orally GRANTED Plaintiffs' Motion. This Order provides further analysis regarding the Court's ruling from the bench.

To the extent that there is any inconsistency between this Order and the Court's ruling from the bench, the terms of this Order control.

## BACKGROUND[1]

Plaintiffs in the instant litigation are: (1) CogniMem Technologies Inc., a Delaware corporation with its principal place of business in Folsom, California, and (2) Bruce McCormick, CogniMem's minority shareholder,[2] CEO and director.  On May 9, 2013, Plaintiffs filed their Complaint alleging claims for (1) violation of the Anti-Cybersquatting Act, 15 U.S.C. § 1125(d); (2) breach of fiduciary duty; (3) fraud; (4) declaratory relief; (5) violation of Cal. Bus. & Prof. Code § 17200; and (6) conversion.  The Complaint names the following Defendants: (1) Guy Paillet, a minority shareholder and former director of CogniMem; (2) Anne Menendez, a minority shareholder and former director of CogniMem; (3) General Vision, Inc. ("General Vision"), a California corporation which is a majority shareholder in CogniMem; (4) Cognitive Silicon Group, Inc., a California corporation which is a parent corporation of General Vision; and (5) Norlitech LLC, a California limited liability company allegedly owned and controlled by Paillet and Menendez.  As alleged, Paillet and Menendez are both officers and directors of General Vision and controlling shareholders in Cognitive Silicon Group.  Plaintiffs' claims arise out of Defendants' allegedly wrongful acts to devalue CogniMem and McCormick's ownership interest in CogniMem, strip CogniMem of its operating capital, usurp CogniMem's corporate opportunities for Defendants' personal gain, and deprive CogniMem of its intellectual property.

---

[1] Unless noted otherwise, the relevant facts are derived, at times verbatim, from Plaintiffs' Complaint, filed on May 9, 2013, (ECF No. 1), and Plaintiffs' Motion for Preliminary Injunction, (ECF No. 16).

[2] The parties disagree on the percentage of McCormick's ownership interest in CogniMem. Plaintiffs state that McCormick owns 33.91% of CogniMem's outstanding shares.  (ECF No. 14-1 at 2; ECF No. 19 at 5.)  According to Defendants, however, McCormick's ownership interest constitutes only 32.14%.  (ECF No. 15 at 4-5.)

From the date of its incorporation in April of 2011, CogniMem had four Board of Directors members: Plaintiff McCormick, Defendant Paillet, Defendant Menendez and Ivo Austin. On April 2, 2013, Austin, Paillet and Menendez resigned from the Board as a result of serious disagreements with McCormick, thus leaving McCormick as the sole director of CogniMem. On May 9, 2013, McCormick, as the sole member of CogniMem's Board of Directors, adopted CogniMem's bylaws ("First Bylaws") which, among other things, prescribed a specific procedure for amending the bylaws, reduced the size of the Board of Directors to one director, and included provisions for calling annual and special shareholders meetings.

On May 15, 2013, General Vision, as CogniMem's majority shareholder, adopted its own set of CogniMem's bylaws ("Second Bylaws"), which set the Board's size at three directors and appointed Menendez and Paillet as directors. On the same day, Menendez and Paillet sent notice for the Board of Directors meeting to McCormick and set the meeting for the next day, May 16 at 4:00 p.m. The meeting's agenda included, inter alia, removal of McCormick as CogniMem's director and officer and dissolution of CogniMem. To prevent those events from happening, Plaintiffs filed an Ex Parte Application for a Temporary Restraining Order on May 15, 2013. (ECF No. 6.) In their Application, Plaintiffs argued that the Second Bylaws were invalid and that the actions of General Vision, Paillet and Menendez directed at removing McCormick from corporate offices and dissolving CogniMem were prohibited by the First Bylaws. (Id.) Accordingly, Plaintiffs requested a Temporary Restraining Order enjoining Defendants from removing McCormick from corporate offices at CogniMem, from dissolving CogniMem, and also from taking any other actions contrary to the First Bylaws. (Id.)

On May 16, 2013, the Court issued an Order setting this matter for hearing on May 22, 2013, directing Defendants to file an opposition to Plaintiffs' Application no later than May 20, 2013, and directing Plaintiffs to file a response no later than May 21, 2013. (ECF No. 8.)

///

Pending the hearing, to preserve the status quo and to prevent irreparable harm to Plaintiffs, the Court enjoined any actions by Defendants directed at removing McCormick from corporate offices at CogniMem and dissolving CogniMem. (Id.) Defendants had not filed any opposition to Plaintiffs' Application before the Court-imposed deadline. On May 21, 2013, the Court vacated the May 22, 2013 hearing and granted a Temporary Restraining Order requested by Plaintiffs. (ECF No. 13.) By its May 21, 2013 Order, the Court also directed Plaintiffs to file a motion for preliminary injunction no later than May 24, 2013. (ECF No. 13.) Subsequently, Plaintiffs filed the instant Motion for Preliminary Injunction as directed by the Court. (ECF No. 14.) On May 29, 2013, Defendants filed a timely opposition to Plaintiffs' Motion. (ECF Nos. 15-18.)

## STANDARD

The purpose of a preliminary injunction is to preserve the relative positions of the parties—the status quo—until a trial on the merits can be conducted. LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158 (9th Cir. 2006) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). "A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010) (quoting Sierra On–Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir.1984)).

A plaintiff seeking a preliminary injunction must establish that he is (1) "likely to succeed on the merits"; (2) "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "a preliminary injunction is in the public interest." Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008); see also Am. Trucking Ass'ns, Inc. v. City of L.A., 559 F.3d 1046, 1052 (9th Cir. 2009) (adopting the preliminary injunction standard articulated in Winter).

///

"If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied." Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010) (citing Winter, 555 U.S. at 22). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Village of Gambell, AK, 480 U.S. 531, 542 (1987)).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and shows that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiff's favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

## ANALYSIS

### A.    Likelihood of Success on the Merits

Defendants argue that Plaintiffs are not entitled to injunctive relief because the First Bylaws adopted by McCormick for CogniMem are invalid under Delaware law.[3] (ECF No. 18 at 2, 8-11.)

"The bylaws of a corporation are presumed to be valid, and the courts will construe the bylaws in a manner consistent with the law rather than strike down the bylaws." Frantz Mfg. Co. v. EAC Indus., 501 A.2d 401, 407 (Del. 1985). However, a bylaw that is inconsistent with a statute should be declared void. Id. With respect to the power to adopt bylaws, Section 109(a) of the Delaware General Corporation Law ("GCL") provides as follows:

---

[3] The parties agree that Delaware law governs the instant dispute.

> After a corporation . . . has received any payment for any of its stock, the power to adopt, amend or repeal bylaws shall be in the stockholders entitled to vote. . . . Notwithstanding the foregoing, any corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors . . . The fact that such power has been so conferred upon the directors or governing body, as the case may be, shall not divest the stockholders . . . of the power, nor limit their power to adopt, amend or repeal bylaws.

8 Del. C. § 109(a).

Here, CogniMem's Certificate of Incorporation provides, in relevant part, that "the Board of Directors shall have the power to adopt, amend or repeal the by-laws." (Declaration of Bruce McCormick ("McCormick Decl.") Ex. 1, ECF No. 14-2.) Accordingly, Plaintiff McCormick as CogniMem's sole remaining director possessed authority to adopt the First Bylaws for CogniMem. Those Bylaws are presumed valid unless the Court concludes that they contain provisions prohibited by the applicable statutes. See Frantz Mfg. Co., 501 A.2d at 407.

The First Bylaws adopted by McCormick for CogniMem contain the following relevant provisions: (1) the number of directors is set at one, subject to change pursuant to resolution approved by 67% of CogniMem's stockholders; (2) the bylaws may be amended or repealed at any annual meeting of the stockholders by a vote of 67% of the shares represented and entitled to vote at such meeting, or by a unanimous vote of the Board of Directors; (3) special meetings of the stockholders may be called by the Board of Directors, the Chief Executive Officer, or by the stockholders holding not less than 67% of the voting power of the corporation; and (4) written notice of each meeting of stockholders shall be given to each stockholder entitled to vote at the meeting not less than thirty nor more than sixty days before such meeting. (McCormick Decl. & Ex. 3.)

Shortly after the adoption of the First Bylaws by McCormick, Defendant General Vision attempted, by a written consent of a majority shareholder, to enact its own set of bylaws for CogniMem, increase the size of the Board of Directors to three directors and appoint Defendants Paillet and Menendez as CogniMem's directors.

(Declaration of Brent Lawrence ("Lawrence Decl.") ¶ 5 & Exs. 4, 5, ECF No. 14-3.) Defendants then attempted to hold a meeting of the Board of Directors for the purpose of removing McCormick from corporate offices at CogniMem and dissolving CogniMem. (Lawrence Decl. ¶ 6 & Ex. 4.) In support of its authority to adopt the Second Bylaws for CogniMem, General Vision relied on Section 228 of the Delaware GCL, which states, in relevant part:

> Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted . . . .

8 Del. C. § 228(a). However, pursuant to the First Bylaws—which McCormick was authorized to adopt—CogniMem's bylaws may be amended or repealed only (1) at any annual meeting of the stockholders by a vote of 67% of the shares represented and entitled to vote at such meeting, or (2) by a unanimous vote of the Board of Directors. (McCormick Decl. ¶ 10 & Ex. 3.) As demonstrated by the record, General Vision owns no more than 53.57% of CogniMem's shares, (see ECF No. 18 at 5), which is insufficient to amend or repeal the First Bylaws by a shareholders' written consent. See 8 Del. C. § 228(a).

Defendants, however, argue that the First Bylaws adopted for CogniMem by McCormick are invalid under Delaware law because those Bylaws improperly limit the stockholders' voting and meeting rights and also limit the stockholders' power to adopt, amend or repeal the bylaws by restricting "the manner in which action by the stockholders could be effected." (ECF No. 18 at 10-11.)

///
///
///

7

1 The crux of Plaintiffs' position is that, by imposing the supermajority voting requirement
2 of 67% on all major decisions by CogniMem's stockholders, McCormick effectively
3 created a regime under which the remaining shareholders are prevented "from taking
4 any action at all without the approval of McCormick."  (ECF No. 18 at 9.)
5 Although supermajority vote requirements are disfavored under Delaware law,
6 they are not per se invalid and can be validly included in a corporation's certificate of
7 incorporation or bylaws.  See, e.g., Centaur Partners, IV v. Nat'l Intergroup, Inc.,
8 582 A.2d 923, 926-27 (Del. 1990) (explaining that high vote requirements are disfavored
9 in light of the general policy against shareholder disenfranchisement, but holding that the
10 presumption of majority rule in corporate decision-making may be overcome by clear,
11 unambiguous and unequivocal statement in the corporation's charter or bylaw imposing
12 the supermajority vote requirement).  At this early stage in the proceeding, before the
13 parties have had any opportunity to engage in meaningful discovery, the Court is unable
14 to determine whether the First Bylaws adopted by McCormick for CogniMem place such
15 limitations on the stockholders' voting rights as to be invalid under the applicable law.
16 Important for the purposes of Plaintiffs' instant Motion, there appears to be a factual
17 dispute with respect to the parties' respective ownership percentages of CogniMem's
18 shares, the resolution of which is essential in determining whether the First Bylaws in
19 fact deprive the remaining shareholders of their voting rights.  In particular, according to
20 Defendants' opposition memorandum, McCormick owns only 32.14% of CogniMem's
21 outstanding shares.  (See ECF No. 18 at 5.)  Accordingly, the remaining shareholders
22 appear to have enough voting power to overcome the 67% threshold established by the
23 First Bylaws in order to amend those Bylaws or to take any other action within the
24 shareholders' authority.  At the June 4, 2013 hearing, Defendants' counsel also
25 conceded that the First Bylaws do not prohibit CogniMem's remaining shareholders from
26 amending those Bylaws and from dismissing McCormick from CogniMem's corporate
27 offices at an annual shareholders' meeting, but merely create procedural requirements
28 precluding Defendants from taking those actions immediately.

The statutory framework created by Delaware's GCL contemplates reelection of directors at an annual meeting of stockholders as provided by the corporation's bylaws. See 8 Del. C. § 211(b) ("[A]n annual meeting of stockholders shall be held for the election of directors on a date and at a time designated by or in the manner provided in the bylaws."); Comac Partners, L.P. v. Ghaznavi, 793 A.2d 372, 380 (Del. Ch. 2001) ("Our statutory scheme generally anticipates that the election of directors will be by the stockholders on an annual basis."); Rohe v. Reliance Training Network, Inc., No. 17992, 2000 WL 1038190, at *11 (Del. Ch. July 21, 2000) ("[E]xcept in the case of a properly classified board, all directors must face the electorate on an annual basis at the corporation's annual stockholder's meeting.")  Although the Delaware GCL allows stockholders to elect directors by written consent, in lieu of an annual meeting, such written consent can be validly used by stockholders only if (1) the action by consent is unanimous, or (2) "all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action." 8 Del. C. § 211(b).  "Stockholders cannot use a non-unanimous written consent to remove lawfully serving incumbent directors, and then elect successor directors, between annual meetings." Crown EMAK Partners, LLC v. Kurz, 992 A.2d 377, 401 (Del. 2010).  Thus, the fact that Defendants have to wait until the annual meeting of CogniMem's stockholders to remove McCormick as the corporation's director is not sufficient, by itself, to demonstrate that CogniMem's stockholders are deprived of their statutory right to vote for directors.

In sum, given that McCormick as the sole remaining director of CogniMem had the power to adopt the First Bylaws, that those Bylaws should be presumed valid, and that the record is insufficiently developed for the Court to determine whether, under the specific factual circumstances of this case, the Bylaws would withstand scrutiny under Delaware law, the Court concludes that Plaintiffs have raised, at the very least, "serious questions going to the merits" of their claims.  See Alliance for Wild Rockies, 632 F.3d at 1134-35.

**B.     Irreparable Injury**

To be entitled to a preliminary injunction, a plaintiff must demonstrate immediate threatened injury. Caribbean Marine Servs. Co., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). Indeed, a plaintiff "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Ft. Funston Dog Walkers v. Babbitt, 96 F.Supp.2d 1021, 1039 (N.D. Cal. 2000) (citation omitted). "The preliminary injunction must be the only way of protecting the plaintiff from harm." Id. Generally, the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974) (citation omitted).

Here, Plaintiffs argue that, in the absence of injunctive relief, Plaintiff McCormick "would suffer irreparable harm in that he has invested $1.7 million in CogniMem and lent an additional $300.000 to CogniMem and would have no ability to prevent the defendants from devaluing and dissolving the corporation, as they have threatened to do." (ECF No. 14-1 at 10.) Although a claim of monetary losses, without more, is not sufficient to demonstrate an irreparable injury, a showing that a company's very business existence is threatened is sufficient to show irreparable harm. See Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1474 (9th Cir. 1985) (suggesting that the irreparable injury requirement would be satisfied if plaintiff demonstrates that it is "threatened with extinction" or with "being driven out of business"). Here, the very existence of Plaintiff CogniMem is threatened in the absence of injunctive relief.

Additionally, Plaintiffs have sufficiently demonstrated that, in the absence of injunctive relief, they will suffer damages to the goodwill of their business and would lose certain intellectual property rights, including rights to a registered trademark "CogniMem," which Defendants are allegedly trying to divert to themselves. (ECF No. 6 at 8.)

1    The losses alleged by Plaintiffs amount to "irreparable harm" for the purposes of issuing
2    injunctive relief.  See, e.g., Rent-A-Center, Inc. v. Canyon Television and Appliance
3    Rental, Inc., 944 F.2d 597, 603 (9th Cir.1991); Stuhlbarg Int'l Sales Co. v. John D. Brush
4    & Co., 240 F.3d 832, 841 (9th Cir.2001); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,
5    Ltd., 518 F.Supp.2d 1197, 1215-19 (C.D. Cal. 2007).
6         Accordingly, the Court concludes that Plaintiffs have sufficiently demonstrated
7    that they are likely to suffer irreparable harm in the absence of injunctive relief.

### C.    Balance of Equities and Consideration of Public Interest

In deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief . . . pay[ing] particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 9.  Here, while Plaintiffs would suffer irreparable injury in the absence of a preliminary injunction, Defendants would not be harmed by maintaining the status quo.  Therefore, the balance of hardships tips sharply in Plaintiffs' favor.  Further, because the preliminary injunction's reach is narrow and affects only the parties with no impact on nonparties, "the public interest [is] at most a neutral factor in the analysis rather than one that factors granting or denying the preliminary injunction." See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138-39 (9th Cir. 2009).

In sum, the Court finds that Plaintiffs have carried their burden of demonstrating that there exist, at the very least, serious questions going to the merits of their claims, that Plaintiffs would be irreparably harmed in the absence of injunctive relief, that the equities weigh strongly in favor of granting the requested preliminary injunction, and that the injunction would not be against public interest. See Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

///

Accordingly, to preserve the status quo between the parties before this case can be decided on the merits, the Court will grant Plaintiffs' Motion for Preliminary Injunction.

### D. Security Bond

Pursuant to the Federal Rule of Civil Procedure 65(c), "the court may issue a preliminary injunction only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003). The Court, finding that no harm will result to Defendants as a result of this preliminary injunction being issued, orders that no security bond is required.

### CONCLUSION

For the reasons stated above, it is hereby ORDERED that:

1. Plaintiffs' Motion for Preliminary Injunction (ECF No. 14) is GRANTED.
2. Defendants, their agents, officers and employees and all those acting in concert with them who receive actual notice of this Order are hereby enjoined from taking any actions not in accordance with the Bylaws enacted for CogniMem Technologies, Inc., by Bruce McCormick on May 9, 2013.

IT IS SO ORDERED.

DATED: June 6, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

12